**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GABRIEL BONILLA | : | CIVIL ACTION |
|  | : |  |
|  | : | NO. 2:09cv712 |
| v. | : |  |
|  | : | JURY TRIAL DEMANDED |
| MOTEL 6 OPERATING L.P. | : |  |
|  | : | **ELECTRONICALLY FILED** |

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    BRIEF STATEMENT OF FACTS

While he was a guest at the Motel 6 in Washington, Pennsylvania, plaintiff Gabriel

Bonilla met Richard Pruden and Trey Willis.[1]  Pruden and Willis were staying in a room near

Bonilla's room, and were "hanging out" with several young women.[2]  According to Bonilla,

Pruden and Willis were not causing any disturbance, and were just acting like normal motel

guests.[3]  Pruden or Willis offered Bonilla and his coworkers sex with each one's choice of one of

the women for $30.[4]  Bonilla and several of his coworkers accepted this offer.[5]  Bonilla gave

Pruden $30 and had sex with an 18, 19, or 20 year old woman whose name Bonilla does not

know.[6]  Bonilla was 43 years old at the time.[7]  The woman did not receive any of the money that

Bonilla paid to Pruden and Willis.[8]

---

[1] Bonilla Dep., Ex. A, 36:18–38:5; Willis Prelim. Hearing, Ex. B, 34:14–17.
[2] Bonilla Dep., Ex. A, 36:18–38:5.
[3] Bonilla Dep., Ex. A, 36:18–38:5; Willis Prelim. Hearing, Ex. B, 34:14–17.
[4] Bonilla Dep., Ex. A, 37:17–39:10, 41:1–4; Willis Prelim. Hearing, Ex. B, 27:7–18, 35:21–23.
[5] Willis Dep., Ex. D, 127:10-134:8; Kowcheck Dep., Ex. E, 8:12-25, 11:9-12:4; Davis Dep., Ex. F, 20:15-21:12; Wilson Dep., Ex. G, 25:15-17, 28:16-21, 32:20-35:18, 51:14-52:9; Young Dep., Ex. H, 16:17-18:25.
[6] Bonilla Dep., Ex. A, 38:11–21; *see* Kowcheck Dep., Ex. E, 5:5-6; Davis Dep., Ex. F, 5:22-23; Wilson Dep., Ex. G, 6:23-24; Young Dep., Ex. H, 6:7-8.
[7] *See* Bonilla Dep., Ex. A, 7:11-18.
[8] *See* Kowcheck Dep., Ex. E, 31:11-16; Davis Dep., Ex. F, 35:19-36:7; Wilson Dep., Ex. G, 24:9-14; Young Dep., Ex. H, 18:5-7.

Motel 6 has a policy against permitting prostitution.  Prostitution presents a problem that requires delicate handling.  Invading customers' privacy or incorrectly alleging that a customer is a prostitute could be very bad for business and could incur liability for slander.[9]  There is no evidence that Motel 6 knew of the prostitution in which Bonilla participated.

Bonilla was staying in Washington, Pennsylvania because he was working as a carpenter on a nearby construction project.[10]  Although he was then living in Alexandria, Virginia,[11] Bonilla traveled and stayed in motels for weeks at a time to work on construction projects.[12] When Bonilla travels from state to state, it is not unusual for him to pay for sex.[13]

During the night on which Bonilla bought sex through Pruden and/or Willis, Bonilla was involved in an altercation with them in which he was assaulted by them.[14]  Willis testified that Bonilla tried to have anal sex with the woman and that it was not allowed, and that he persisted after he was warned.[15]  Willis testified that Bonilla acted aggressively and appeared to be angry after being escorted out of the room by Willis and Pruden.[16]  Bonilla testified that he did not know the reason for the assault.  According to Bonilla's testimony, as soon as he stepped out of his room to smoke a cigarette after having slept for a few hours, Pruden started an altercation with him.[17]  Police were called and investigated the assault.[18]  Other then a dispute stemming from the prostitution, no plausible motive for the assault has been suggested.  During their

---

[9] *See Noon v. Gregory*, 18 Pa.D.& C.3d 233, 234 (Pa. Com. Pl. Luzerne Co. 1980) (holding that calling a woman a whore is slanderous per se) (citing *Hartranft v. Hesser*, 34 Pa. 117 (1859) and *Vanderlip v. Roe*, 23 Pa. 82 (1854)).
[10] Bonilla Dep., Ex. A, 16:21–18:4, 30:16–31:4; Willis Prelim. Hearing, Ex. B, 25:7–12.
[11] Compl. ¶ 1.
[12] Bonilla Dep., Ex. A, 16:21–18:4, 30:16–31:4; Willis Prelim. Hearing, Ex. B, 25:7–12.
[13] Bonilla Dep., Ex. A, 46:20–47:2.
[14] Compl. ¶ 5.
[15] Willis Dep., Ex. D, 19:1-21, 29:25-33:7, 64:8-66:20.
[16] Willis Dep., Ex. D, 19:1-21, 29:25-33:7, 64:8-66:20.
[17] Bonilla Dep., Ex. A, 59:19–62:6.
[18] *See* Incident Investigation Report, Ex. C.

investigation, police found $30 in cash at the scene of the assault.[19]  Both Pruden and Willis were

arrested and are incarcerated for the assault.

Motel 6 submitted a motion for summary judgment before the Rule 16 conference.  The

Court denied the motion for summary judgment without prejudice because the motion was

premature.  Discovery is now closed, and Motel 6 submits the instant motion.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence in the record shows that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.[20]  "[T]he mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact."[21]  The summary judgment standard requires the

issue to be genuine, that is, one where a reasonable jury, based on the evidence presented, could

return a verdict for the non-moving party with regard to that issue.[22]  The inquiry for a summary

judgment motion is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law."[23]  If the non-moving party's evidence is "merely colorable," or is "not significantly

probative," summary judgment may be granted.[24]  "[W]hen the factual context renders a claim

---

[19] *See* Incident Investigation Report, Ex. C, D000240.
[20] Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[21] *Liberty Lobby*, 477 U.S. at 247-48.
[22] *See id.* at 248.
[23] *Id.* at 251-52.
[24] *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engr'rs.*, 982 F.2d 884, 890 (3d Cir. 1992); *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992); *United States v. Hargrove*, No. CIV. A. 06-1059, 2007 WL 2811832, *3 (W.D. Pa. Sept. 24, 2007); *see also Big Apple BMW, Inc. v. BMW of North America*, 974 F.2d 1358, 1362 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence); *Grigsby v. Kane*, No. 1:CV-99-2083, 2005 WL 348303, *16 (M.D. Pa. Feb. 2, 2005) (holding that plaintiff's uncorroborated testimony that supervisor made a racially insensitive comment was not sufficient "for a factfinder to infer that racial discrimination was a determinative factor for DeSousa's role in Grigsby's termination"); *cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will, as the Court of

implausible, the non-movant has a heavier burden of production in opposing a motion for summary judgment."[25]  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."[26]

## III.   APPLICABLE LAW

Pennsylvania substantive law applies in this case to determine whether there could be any liability imposed on Motel 6.[27]  A federal court sitting in diversity must apply the relevant state's substantive law as that law has been set forth by its legislature or highest court.[28]  "When a state's highest court has yet to speak on a particular issue, it becomes the role of the federal court to 'predict how [the state's highest court] would decide the issue were it confronted with the problem.'"[29]  Holdings of lower state courts should not be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.[30]

## IV.   ARGUMENT

### A.   Summary Judgment Should Be Granted Because Plaintiff Gabriel Bonilla's Injuries Resulted from His Participation in Criminal Activities

Bonilla cannot recover from Motel 6 because his injuries resulted from his involvement in prostitution, a criminal activity.  "[A]s a matter of law, if plaintiff was engaged in criminal

---

Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007) ("The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony *unless it is inherently implausible* even if the testimony is that of an interested witness." (emphasis added)).

[25] *Pitak v. Bell Atl. Network Services, Inc.*, 928 F. Supp. 1354, 1366 (D.N.J. 1996).

[26] *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[27] *See Kabo v. Summa Corp.*, 523 F.Supp. 1326, 1327–29 (E.D. Pa. 1981) (holding that Nevada law must be applied to determine liability of Nevada hotel); *Levin v. Desert Palace Inc.*, 465 A.2d 1019, 1021 (Pa. Super. 1983) ("A hotel owner relies on the laws of the state in which the hotel is located to determine the standard of conduct required of him.").

[28] *Jaworowski v. Ciasulli*, 490 F.3d 331, 333 (3d Cir. 2007) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) and *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)).

[29] *Id.* (quoting *Packard*, 994 F.2d at 1046) (alterations in the original).

[30] *Wayne Moving & Storage of New Jersey, Inc. v. Sch. Dist. of Philadelphia*, 625 F.3d 148, 154 (3d Cir. 2010); *see also Budget Rent-A-Car System, Inc. v. Chappell*, 407 F.3d 166, 174 n.7 (3d Cir. 2005) ("When a state's highest court denies review, the policy reasons for following an intermediate court decision (absent compelling evidence to the contrary) are strengthened.").

activity and if such activity was a substantial factor in causing plaintiff's harm, plaintiff [is] precluded from recovery for such harm."[31]  Bonilla admitted that he gave his assailants $30 to have sex with a woman that was with them,[32] and that the assault on him occurred after the purchase of sex.  As the purchasing of sex is a criminal activity,[33] Bonilla is precluded from recovery as a matter of law since his purchase of sex through pimps was a substantial factor in later being attacked by those pimps.

 In *Alexander v. Synthatron Corp*., a court examined whether a man who was injured during his manufacturing of illegal drugs was barred from recovery by his illegal conduct.[34]  The plaintiff was found by a jury to have been attempting to produce methamphetamine when he was injured by a fire and explosion.[35]  Although the *Alexander* court could not find any Pennsylvania cases involving criminal conduct as a defense to product liability actions, it relied on analogous principles in other areas of law to hold that the plaintiff could not recover as a matter of law when the plaintiff's criminal activity was a substantial factor in causing his harm.[36]  "'The principal [sic] of public policy is, that no court will lend its aid to a man who grounds his action upon an immoral or illegal act . . . . [P]rinciples of public convenience demand that the justice of the case shall yield to higher considerations, the operation of the precedent on public morals and the public interest.  It is for those reasons courts of justice will not assist an illegal transaction in

---

[31] *Alexander v. Synthatron Corp*., 10 Pa. D. & C.4th 584, 589 (Pa. Com. Pl. Bucks Co. 1991), *aff'd*, 620 A.2d 1230 (Pa. Super. 1992), *appeal denied*, 626 A.2d 1154 (Pa. 1993).

[32] Bonilla Dep., Ex. A, 37:17–39:10, 41:1–4; Willis Prelim. Hearing, Ex. B, 27:7–18, 35:21–23.

[33] 18 Pa.C.S. § 5902(e) ("A person commits the offense of patronizing prostitutes if that person hires a prostitute or any other person to engage in sexual activity with him or her or if that person enters or remains in a house of prostitution for the purpose of engaging in sexual activity."); *see also* 18 Pa.C.S. § 902; *Peoples v. Discover Fin. Services, Inc*., 387 F. App'x. 179, 185 (3d Cir. 2010) ("In Pennsylvania, patronizing a prostitute is illegal."); *Peoples v. Dayle*, 16 Pa. D. & C. 5th 85, 88 (Pa. Com. Pl. Phila. Co. 2010) ("Under Pennsylvania law, patronizing a prostitute is illegal.").

[34] *Alexander v. Synthatron Corp*., 10 Pa. D. & C.4th 584, 588–91 (Pa. Com. Pl. Bucks Co. 1991), *aff'd*, 620 A.2d 1230 (Pa. Super. 1992), *appeal denied*, 626 A.2d 1154 (Pa. 1993).

[35] *Id.* at 588–89.

[36] *Id.* at 589–90.

any respect.'"[37]  The opinion was affirmed without a published opinion by the Pennsylvania

Superior Court, and the Pennsylvania Supreme Court denied review.[38]

    *Alexander* accurately reflects Pennsylvania law.  Courts applying Pennsylvania law have

consistently refused to allow plaintiffs to profit from participation in illegal activities.[39]  For

example, the Pennsylvania Superior Court reversed an award of damages for reduced earning

potential stemming from the plaintiff's criminal conviction in *Holt v. Navarro*.[40]  In *Holt*, the

Superior Court observed:  "The common law principle that a person should not be permitted to

benefit by his own wrongdoing, particularly his own crimes, prevents a plaintiff from recovering

losses which flowed from those criminal acts."[41]

    A plaintiff was barred from recovering damages in a civil suit stemming from patronizing

a prostitute in *Peoples v. Dayle*[42] (a state court case) and in *Peoples v. Discover Fin. Services,

Inc.*[43] (a federal court case).  In these cases, the plaintiff alleged that on multiple occasions, he

purchased sex from a prostitute and the prostitute overcharged his credit card, which he could not

---

[37] *Id.* at 590 (alterations in original) (quoting *Contractor Industries v. Zerr*, 359 A.2d 803, 805 (Pa. Super. 1976), which quoted *Fowler v. Scully*, 72 Pa. 456, 467 (1872)).

[38] *Alexander v. Synthatron Corp.*, 10 Pa. D. & C.4th 584, 588–91 (Pa. Com. Pl. Bucks Co. 1991), *aff'd*, 620 A.2d 1230 (Pa. Super. 1992), *appeal denied*, 626 A.2d 1154 (Pa. 1993) ); *see also Budget Rent-A-Car System, Inc. v. Chappell*, 407 F.3d 166, 174 n.7 (3d Cir. 2005) ("When a state's highest court denies review, the policy reasons for following an intermediate court decision (absent compelling evidence to the contrary) are strengthened.").

[39] *See Peoples v. Discover Fin. Services, Inc.*, No. CIV.A.08-2024, 2009 WL 3030217, *1 (E.D. Pa. Sept. 22, 2009), *aff'd*, 387 F. App'x. 179 (3d Cir. 2010), *cert. denied*, 2011 WL 134376 (U.S. Jan. 18, 2011); *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 865 (Pa. 2004); *Holt v. Navarro*, 932 A.2d 915 (Pa. Super. 2007); *Lewis v. Miller*, 543 A.2d 590, 592 (Pa. Super. 1988) (denying recovery where the plaintiff's decedent died while engaged in illegal and wanton conduct); *Peoples v. Dayle*, 16 Pa. D. & C. 5th 85 (Pa. Com. Pl. Phila. Co. 2010); *Alexander v. Synthatron Corp.*, 10 Pa. D. & C.4th 584, 588–91 (Pa. Com. Pl. Bucks Co. 1991); *Mineo v. Eureka Sec. Fire & Marine Ins. Co.*, 125 A.2d 612, 615 (Pa. Super. 1956) (cited with approval in *Hurtt v. Stirone*, 206 A.2d 624, 626 (Pa. 1965)); *see also In re Greifer's Estate*, 5 A.2d 118, 118 (Pa. 1939) ("[A] person will not be permitted to profit by his own wrong, particularly by his own crime."); *Commonwealth v. Johnson*, 764 A.2d 1094, 1099 (Pa. Super. 2000) ("Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong." (emphasis omitted)), *appeal denied*, 781 A.2d 141 (Pa. 2001); *In re Trust Estate of Jamison*, 636 A.2d 1190, 1192 (Pa. Super. 1994) ("No man can take advantage of his own wrong.") (quotation marks omitted).

[40] *Holt v. Navarro*, 932 A.2d 915 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1164 (Pa. 2008).

[41] *Holt*, 932 A.2d at 920.

[42] *Peoples v. Dayle*, 16 Pa. D. & C. 5th 85 (Pa. Com. Pl. Phila. Co. 2010), *aff'd*, No. 2019 EDA 2010 (Pa. Super. Feb. 15, 2011).

[43] *Peoples v. Discover Fin. Services, Inc.*, No. CIV.A.08-2024, 2009 WL 3030217, *1 (E.D. Pa. Sept. 22, 2009), *aff'd*, 387 F. App'x. 179 (3d Cir. 2010), *cert. denied*, 2011 WL 134376 (U.S. Jan. 18, 2011).

detect because he was blind.[44]  In *Peoples v. Discover*, the plaintiff sued the alleged prostitute

and the credit card company.  The federal district court concisely stated as follows: "Under

Pennsylvania law, patronizing a prostitute is illegal.  Plaintiff testified that the charges in dispute

were for prostitution services, and, consequently, he cannot recover based on them."[45]  The

federal district court granted summary judgment on all federal claims and on the state law claims

asserted against the credit card company, and declined to exercise jurisdiction over the plaintiff's

state law claims against the alleged prostitute.  In *Peoples v. Dayle*, the state court sustained a

demurrer under the illegality doctrine on the plaintiff's claims that the defendant-alleged

prostitute committed common-law theft, theft by deception and conversion, common-law fraud,

Pennsylvania statutory consumer fraud, and intentional infliction of emotional distress.[46]

       In the instant case, there can be no doubt that Bonilla's injuries flowed from his purchase

of sex through two pimps.  Summary judgment in favor of Motel 6 must be granted because the

evidence shows that Bonilla's purchase of sex through pimps was a substantial factor in his later

being attacked by those pimps.  Prior to the transaction and the sex, there was no trouble between

Bonilla and Pruden and Willis.[47]  Bonilla paid Pruden without incident prior to having sex with

one of the women.[48]  No one else was attacked that night by Pruden and Willis.[49]  According to

Bonilla's testimony, he was attacked by Pruden immediately when Bonilla left his room to

smoke a cigarette.[50]  Bonilla claims he did not know the reason for the assault on him by Pruden

and Willis.[51]  The only plausible conclusions are that the attack and the prostitution were

---

[44] *Peoples v. Discover Fin. Services, Inc.*, 2009 WL 3030217, *1.
[45] *Id.* (citations omitted).  The court also held that alternative grounds existed to support summary judgment and dismissal of the claims.
[46] *Peoples v. Dayle*, 16 Pa. D. & C. 5th at 88.
[47] Preliminary Hearing 34:14–17.
[48] Willis Prelim. Hearing, Ex. B, 34:14–17.
[49] *See* Bonilla Dep., Ex. A, 65:23–66:3.
[50] Bonilla Dep., Ex. A, 61:25–62:3.
[51] Bonilla Dep., Ex. A, 59:19–60:1.

connected and that Bonilla would not have been attacked if he had not purchased sex through pimps that night.

Bonilla's self-serving testimony is not sufficient to create a genuine issue of material fact. This Court is not required to "turn a blind eye" to the weight of the evidence,[52] is not required to credit an uncorroborated self-serving statement,[53] and is not required to deny summary judgment if there is "some metaphysical doubt as to the material facts."[54] Even if Bonilla's testimony about the events of the night of the assault is to be believed, it fails to support a finding that the prostitution was not a substantial factor in his injuries. Bonilla testified that he did not know the reason for the assault.[55] He suggests no plausible motive for the altercation, and no plausible motive for the assault other than a dispute stemming from the prostitution is supported by any evidence. Finally, Bonilla cannot testify as to the thoughts and mindset of Pruden and Willis. The only credible evidence about the reasons for the altercation and assault is Willis's testimony that the altercation stemmed from Bonilla's participation in prostitution and Bonilla being angry from being escorted out of the room by Pruden and Willis.[56]

The cases that permitted underage-drinkers to recover in negligence suits do not support recovery by a 43-year-old man who was attacked after purchasing sex through pimps. A Pennsylvania court allowed the estate of a 19-year-old decedent to recover from a hotel for negligence in *Rabutino v. Freedom State Realty Co.*[57] The decedent in *Rabutino*, who "was

---

[52] *See Big Apple BMW, Inc. v. BMW of North America*, 974 F.2d 1358, 1362 (3d Cir. 1992) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

[53] *See United States v. Hargrove*, No. CIV. A. 06-1059, 2007 WL 2811832, *3 (W.D. Pa. Sept. 24, 2007) (holding that a factual affidavit by the defendant was not sufficient to defeat summary judgment against him); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (holding that a factual affidavit by the defendant was not sufficient to defeat summary judgment against him).

[54] *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[55] Bonilla Dep., Ex. A, 59:19–60:1.

[56] *See* Willis Dep., Ex. D, 19:1-21, 29:25-33:7, 64:8-66:20.

[57] *Rabutino v. Freedom State Realty Co.*, 809 A.2d 933 (Pa. Super. 2002).

neither intoxicated nor directly involved with the racially-motivated conflict,"[58] was shot during a New Year's party at a hotel attended by hundreds of partygoers under the age of twenty-one.[59] Police were called to the party once it was getting out-of-hand and advised the hotel that the decision to eject partygoers was exclusively the hotel's decision, yet the hotel chose to eject no one.[60]  After the police left, a fight broke out and the decedent was shot when someone fired two gunshots into a crowd.[61]  Based on testimony about these events, the appellate court reversed summary judgment, holding that genuine issues of material fact existed as to whether the hotel breached a duty of care to the decedent and whether any purported breach of that duty was the legal cause of the decedent's death.[62]

As the *Rabutino* court recognized,[63] underage drinkers receive special protection under Pennsylvania law that other wrongdoers do not.  The Pennsylvania Supreme Court, in *Orner v. Mallick*, held that underage drinkers would be permitted to bring suits for social host liability even though persons of the legal drinking age could not.[64]  The drinking age was set for the protection of those under twenty-one.[65]  "[I]n Pennsylvania 'our legislature has made a legislative judgment that persons under twenty-one years of age are incompetent to handle alcohol.'"[66]  As further justification for holding social hosts liable when they serve minors, the *Orner* court pointed out that adult social hosts violate the criminal code when they serve underage drinkers.[67]

---

[58] *Id.* at 935 n.1.
[59] *Id.* at 940, 940 n.5.
[60] *Id.* at 940.
[61] *Id.* at 935.
[62] *Id.* at 941–43.
[63] *See id.* at 941 (citing *Orner v. Mallick*, 527 A.2d 521, 523 (Pa. 1987)).
[64] 527 A.2d 521, 523 (Pa. 1987).
[65] *Id.* at 523.
[66] *Id.* (quoting *Congini v. Portersville Valve Company*, 470 A.2d 515, 517 (Pa. 1983)).
[67] *Id.* at 524.

In the present case, a 43-year-old man paying for sex with a teenaged woman cannot be analogized to a nineteen-year-old drinking alcohol.  The underage drinking laws are explicitly intended for the protection of those under twenty-one.[68]  On the other hand, "[o]ne of the purposes of legislation proscribing prostitution . . . is to protect women from exploitation and degradation"[69] and no one is permitted to patronize prostitutes in Pennsylvania.  Bonilla, by paying for sex, contributed to the exploitation and degradation of women.  Bonilla was also breaking the law and engaging in a dangerous activity that led to his injuries.  As held by the federal and state courts in the *Peoples* cases, purchasing sex is a crime that justifies the denial of civil recovery.[70]  Since the law proscribing prostitution was not enacted for the protection of men paying for sex, Bonilla's violation of the law should prevent him from any recovery for the injuries resulting from his paying for sex.

**B.    Motel 6 Had No Duty to Protect Bonilla from the Dangers of Buying Sex from a Pimp**

Motel 6's duty to take reasonable precautions for the safety of its guests does not extend to protecting customers from the consequences of engaging in dangerous and illegal acts.  A motel is not "an insurer of the visitor's safety."[71]  Nor are innkeepers required to "take

---

[68] *Id.* at 523.

[69] *People v. Warren*. 535 N.W.2d 173, 177 (Mich. 1995); *see also Commonwealth v. Sun Cha Choni*, 983 A.2d 784, 791 (Pa. Super. 2009) ("Dr. Layden testified about the precursors to prostitution such as rape and homelessness, the typical entry-point into prostitution as being between the ages of twelve and fourteen, and the physical and psychological trauma associated with prostitution.  Many of these women suffer from posttraumatic stress disorder, depression, and substance abuse." (citation to record omitted)), *appeal denied*, 993 A.2d 901 (Pa. 2010); *Commonwealth v. DeStefanis*, 658 A.2d 416, 419, 419 n.2 (Pa. Super. 1995) (noting that Pennsylvania's prostitution statute was enacted, in part, to abolish "the incentive to exploit women, and criminal organizations living on the proceeds of prostitution").

[70] *Peoples v. Discover Fin. Services, Inc.*, No. CIV.A.08-2024, 2009 WL 3030217, *1 (E.D. Pa. Sept. 22, 2009), *aff'd*, 387 F. App'x. 179 (3d Cir. 2010), *cert. denied*, 2011 WL 134376 (U.S. Jan. 18, 2011); *Peoples v. Dayle*, 16 Pa. D. & C. 5th 85 (Pa. Com. Pl. Phila. Co. 2010).

[71] *See* Restatement (Second) of Torts, §344, cmt. f; *Morgan v. Valley Forge Drive-In Theatre,* 246 A.2d 875, 879 (Pa. 1968).

extraordinary precautions" to protect guests from the consequences of their own acts.[72]  Whether

a duty exists is a legal question, not a factual question.[73]  Although possessors of land have a

duty to protect invitees from foreseeable harm, possessors do not have a duty to protect an

invitee from an obvious hazard or when the invitee engages in an obviously dangerous activity.[74]

In Pennsylvania cases, it has been found that possessors of land do not have a duty to protect an

invitee who knowingly walks on avoidable ice in a parking lot,[75] descends down the center of

steep stairs without holding a railing,[76] steps into a path of an ATV to try to stop it,[77] or sits in

the stands of a baseball stadium where baseballs could be hit.[78]

      This Court should recognize that procuring sex through pimps is an illegal and obviously

dangerous activity and that innkeepers cannot be held liable when a guest patronizes a prostitute

and is injured as a result.  Dangers of prostitution explicitly recognized by a Pennsylvania court

include dealing with criminal organizations living on the proceeds of prostitution.[79]  The

customer is in a much better position to avoid these dangers than the operator of a motel.  "[A]

guest in a motel or hotel room has a legitimate expectation of privacy during the period of time it

is rented."[80]  A motel invading a customer's privacy or mistakenly concluding that a customer is

a prostitute could be very bad for business and could incur liability for slander.[81]  Taking these

---

[72] *See, e.g.*, *Jefferson v. Young Men's Christian Ass'n*, 47 A.2d 653, 655–56 (Pa. 1946) (affirming compulsory nonsuit where intoxicated guests walked into hotel swimming pool, and drowned, in the middle of the night).

[73] *Krentz v. Consolidated Rail Corp.*, 910 A.2d 20, 28 (Pa. 2006).

[74] *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (applying Restatement (Second) of Torts § 343A (1965) ("A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them . . . .")).

[75] *Carrender*, 469 A.2d at 123.

[76] *Dilauro v. One Bala Avenue Associates*, 615 A.2d 90, 94 (Pa. Super. 1992).

[77] *Chiricos v. Forest Lakes Council Boy Scouts of America*, 571 A.2d 474, 480–81, 481 n.4 (Pa. Super. 1990).

[78] *Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027, 1031 (Pa. Super. 2001).

[79] *Commonwealth v. DeStefanis*, 658 A.2d 416, 419 n.2 (Pa. Super. 1995).

[80] *Commonwealth v. Brundidge*, 620 A.2d 1115, 1118 (Pa. 1993).

[81] *See Noon v. Gregory*, 18 Pa.D.& C.3d 233, 234 (Pa. Com. Pl. Luzerne Co. 1980) (holding that calling a woman a whore is slanderous per se) (citing *Hartranft v. Hesser*, 34 Pa. 117 (1859) and *Vanderlip v. Roe*, 23 Pa. 82 (1854)).

factors into consideration, the duty to protect customers engaging in illegal activities would be an extraordinary burden on motels which is precisely why no such duty exists.

Although not directly on point, the reasoning of the lead opinion of the Pennsylvania Supreme Court from *Minnesota Fire & Cas. Co. v. Greenfield*[82] is instructive.  In *Greenfield*, the court held that the estate of a voluntary heroin user could not recover for her death from the insurer that issued a homeowner's insurance policy covering the man who supplied the heroin to her.  Although *Greenfield* is an insurance coverage case, it was decided on public policy grounds rather than contract interpretation grounds.  The public policy implicated in *Greenfield* requires the denial of recovery from a third party where the plaintiff is injured as a result of illegal activities.  The opinion noted that the decedent "was a willing participant in a criminal transaction."[83]  The lead opinion approved of the Superior Court's observation that "'the courts are being asked to help provide insurance for heroin dealers.'"[84]  In the present case, finding that a motel had a duty to ensure the safety of a john procuring the services of a prostitute through a pimp would be as absurd as finding that a motel had to make its premises safe for the sale of heroin or the manufacture of methamphetamine.  In this case, Bonilla is essentially asking the Court to force Motel 6 to provide insurance for injuries he sustained as a result of participation in criminal activities.  Since it should be held as a matter of law that Motel 6 did not have a duty to protect Bonilla from the risks of purchasing sex through pimps, Motel 6 is entitled to summary judgment.

---

[82] *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 865 (Pa. 2004).
[83] *Id.* at 868.
[84] *Id.* at 865 (quoting the Superior Court opinion).

## C.      Bonilla Cannot Produce Evidence that Motel 6 Breached a Duty to Him

Bonilla is incorrect when he argues that Motel 6 owed him "the highest standard of care"[85] as an innkeeper.  In addition to inaccurately stating the innkeeper standard of care, the Pennsylvania Supreme Court would hold that the innkeeper standard does not apply to protect a person who engages in a criminal activity on a motel's property.  Bonilla lost his status as an invitee when he purchased sex through Pruden and Willis, and became a trespasser or, at best, a licensee.  If Bonilla had the status of a trespasser, Motel 6 would have only owed him the duty to not engage in wanton or willful negligence or misconduct.[86]  If Bonilla had the status of licensee, Motel 6 would have only owed him a duty if it (a) knew of the dangerous activity that Bonilla was helping to create and (b) that Bonilla did not know or have reason to know of the dangerous activity involved.[87]  Since there is no evidence that Motel 6 breached either of these standards of care, summary judgment should be granted in its favor.

The law of Pennsylvania is likely consistent with other jurisdictions that hold that participation in criminal activity strips a person of his or her invitee status.[88]  The Oregon

---

[85] *See* Plaintiff's Pre-Trial Statement, Document 39, at 7 (citing *Stiver v. Parker*, 975 F.2d 261, 271 (6th Cir. 1992)). In support of this standard of care, Plaintiff cites a case from the Sixth Circuit, applying Michigan law, in which a "[s]urrogate mother brought a suit against surrogacy broker, another attorney and physicians for damages sustained when her child, who was actually fathered by her husband rather than the contracting father, was born with severe birth defects."  (Quoting the Westlaw summary.)

[86] *See Rossino v. Kovacs*, 718 A.2d 755, 756 (Pa. 1998) ("In Pennsylvania, a trespasser may recover for injuries sustained on land only if the possessor of land was guilty of wanton or willful negligence or misconduct."); *accord Estate of Zimmerman v. Se. Pennsylvania Transp. Auth.*, 168 F.3d 680, 687 (3d Cir. 1999).

[87] *See Long v. Manzo*, 682 A.2d 370, 373 (Pa. Super. 1996) ("Were the jury to deem Cynthia a licensee, then the landowners would be subject to liability for physical harm caused to her by a condition on their land if: (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved.  Each of those three elements must be satisfied before a possessor of land will be subject to liability." (citing Restatement (Second) of Torts, § 342; *Sharp v. Luksa*, 269 A.2d 659 (Pa. 1970); *Himes v. New Enterprise Stone & Lime Company*, 582 A.2d 353, 356 (Pa. Super. 1990), *appeals denied*, 590 A.2d 758 (Pa. 1991))).

[88] Although Pennsylvania case law directly on the issue is sparse, Pennsylvania Superior Court case law implies that the status of a guest of a hotel is a trespasser if that guest engages in illegal activity, unless the hotel actually knew of the illegal activity and allowed it to continue.  In *Tomko v. Feldman*, 194 A. 338, 339 (Pa. Super. 1937), a husband (Mr. Tomko) sued to recover damages for the deaths of his wife (Mrs. Tomko) and 3-year-old daughter.

Supreme Court, in *Hansen v. Cohen*, held that a man who paid a parking fee to park in a parking lot lost his status as invitee at the parking lot when he started to gamble on dice with an employee of the parking lot.[89]  "By no stretch of the imagination could it be assumed that the defendants intended to permit the premises to be used for gambling purposes.  They were engaged in the business of operating a parking lot and not that of gambling.  Being on an unlawful quest of his own at the time of the fracas, defendants owed [the plaintiff] no duty other than to avoid injuring him willfully or wantonly."[90]  The Mississippi Supreme Court recently held, in *Doe v. Jameson Inn, Inc.*, that the status of a person that entered a hotel to smoke marijuana was, at most, a licensee.[91]  The *Doe* court affirmed summary judgment holding that the hotel "owed no higher duty to [the plaintiff] other than to refrain from willfully or wantonly injuring her."[92]  The Wisconsin Supreme Court, in *Curtis v. Murphy*, held that a man who rented a room at a hotel with a prostitute for the purpose of having sex with her was not a "guest" there.[93]  The court declined to extend "the extraordinary rule of liability which was originally

---

Another man (Mr. Davis) checked into a hotel with Mrs. Tomko and her daughter as "Fred Davis and wife."  *Id.*  At the time, adultery was illegal, but since then Pennsylvania's "Crimes Code has eliminated the crime of adultery." *Fabio v. Civil Serv. Comm'n of City of Philadelphia*, 414 A.2d 82, 89 (Pa. 1980) (citing Act of December 6, 1972, P.L. 1482, No. 334, s 1, 18 Pa.C.S.A. 101 et seq.).  The hotel clerk knew Mr. and Mrs. Tomko and their daughter, and therefore knew that Mrs. Tomko was not Mr. Davis's wife.  *Tomko*, 194 A. at 339.  Mr. Davis, Mrs. Tomko, and her daughter died during the night from carbon monoxide poisoning which was produced by the heater burning in the room.  The jury found the hotel negligent and awarded Mr. Tomko damages.  On defendant's motion for judgment n.o.v., the trial court judge held that plaintiff was not entitled to recover for the death of his wife because the evidence established that the use of the room was illicit and that she was therefore a trespasser, but that the damages awarded by the jury were justified for the death of his daughter.  *Id.* at 341.  The Superior Court disapproved of the trial court's reasoning, noting that the jury verdict found that "if the room was procured for an unlawful purpose, such purpose was known to defendant."  *Id.*  The Superior Court opinion, however, supports the principle that where the use of a hotel room was illicit *without the knowledge of the hotel*, its occupants have the status of trespassers and cannot recover based on the mere negligence of the hotel.  While "extramarital sexual intercourse is not viewed with the same universal disapproval it received several decades ago" and is no longer criminal, *Fabio*, 414 A.2d at 88, it remains true that "patronizing a prostitute is illegal." *Peoples v. Discover Fin. Services, Inc.*, 387 F. App'x. 179, 185 (3d Cir. 2010).
[89] *Hansen v. Cohen*, 276 P.2d 391, 394 (Or. 1954).
[90] *Id.*; *see also Rich v. Tite-Knot Pine Mill*, 421 P.2d 370, 374 (Or. 1966) ("A person who comes on another's premises may be a licensee or invitee for one purpose or part of the premises and not for another."); *Brady v. Kroger*, 221 P.3d 151, 155 (Or. 2009) (citing *Hansen* with approval).
[91] *Doe v. Jameson Inn, Inc.*, No. 2009-CA-00722-SCT, 2011 WL 103543, *3-4 (Miss. Jan. 13, 2011).
[92] *Id.* at *4.
[93] *Curtis v. Murphy*, 22 N.W. 825, 827 (Wis. 1885).

adopted from considerations of public policy to protect travelers and wayfarers" to protect that man.[94]   Additionally, the rule is supported by case law in other jurisdictions.[95]

Not all jurisdictions have the rule,[96] but even under a more lenient rule employed by some jurisdictions, Bonilla could not recover from Motel 6 for his injuries.   Some jurisdictions have held that a hotel guest's violation of the law "will not preclude recovery for injuries resulting from the innkeeper's negligence where there is no showing of a causal connection between the illegality and the plaintiff's injuries."[97]   Under such a standard, Bonilla is still prevented from establishing liability because his injuries resulted from his participation in a criminal activity, as demonstrated above.

The Pennsylvania Supreme Court would probably hold that a motel guest loses his or her invitee status by engaging in criminal activity on the motel premises without requiring a showing that the criminal activity caused the asserted injuries.   The Restatements of Torts and the Pennsylvania Supreme Court's application of the Restatements of Torts in several cases support

---

[94] *Id.* at 826.

[95] *See Dittman v. Williams*, No. 96C-08-024, 1998 WL 960753, *2 (Del. Super. Nov. 24, 1998) ("A person can exceed the scope of the invitation and lose invitee status in one of two ways. First, the scope of the invitation is exceeded if the person leaves that portion of the premises which she has been invited to enter and goes to a different portion of the same premises. Also, the scope of the invitation is exceeded if the person remains on the premises for a longer period of time than anticipated by the invitation or remains on the premises for a purpose other than that contained in the invitation." (footnotes omitted)); *Byers v. Radiant Group, L.L.C.*, 966 So. 2d 506, 510 (Fla. Dist. Ct. App. 2007) ("We acknowledge the possibility that the commission of a particular act of violence on premises owned or occupied by another might cause an invitee to forfeit that status and to become an uninvited licensee or a trespasser."); *Williams v. Mayer*, 4 So. 2d 71, 72 (La. Ct. App. 1941) ("[A]n improper motive or purpose in going to a hotel will alter the status of such persons rendering them trespassers to whom the hotel operator owes no duty except to abstain from willful or wanton injury."); *Jones v. Bland*, 108 S.E. 344, 346 (N.C. 1921) (holding that a person who "has entered or remains upon the premises for an unlawful purpose" "loses the position of invitee and the privileges incident to it, and is to be considered trespasser or mere licensee, towards whom no duty is owing except not to willfully or wantonly injure him.").

[96] *Green by Fritz v. Jackson*, 682 N.E.2d 409, 417 (Ill. App. 1997) ("There is no authority in Illinois which supports Amoco's position that an invitee exceeds the scope of the invitation by entering the premises intoxicated and starting an altercation."); *Meador v. Hotel Grover*, 9 So. 2d 782, 785 (Miss. 1942) ("Where the violation of law is merely a condition and not a contributing cause of the injury, a recovery may be permitted."); *Cramer v. Tarr*, 165 F. Supp. 130, 132 (D. Me. 1958) ("[F]alse registration in an inn or lodging house for an immoral or illegal purpose will not preclude recovery for injuries resulting from the innkeeper's negligence where there is no showing of a causal connection between the illegality and the plaintiff's injuries.").

[97] *Cramer v. Tarr*, 165 F. Supp. 130, 132 (D. Me. 1958).

such a conclusion.  In *Jefferson v. Young Men's Christian Ass'n of Chester*, the Supreme Court

of Pennsylvania applied the First Restatement and held that "'[o]ne who is invited or permitted

to enter a particular part of the land becomes a trespasser if he enters another part of the land.'"[98]

This principle was applied in the context of a hotel in holding that a YMCA guest was not an

invitee when he wandered into a pool in the middle of the night.[99]  In *Moran v. Valley Forge

Drive-In Theater, Inc*., the court applied the Second Restatement of Torts.[100]  A comment in the

section of the Second Restatement defining invitee states that a "possessor of land is subject to

liability to another as an invitee only for harm sustained while he is on the land ***within the scope

of his invitation***."[101]  Since deciding the *Moran* case, the Pennsylvania Supreme Court has

narrowly applied the protection afforded to invitees.[102]  Based on its narrow application of

protection to invitees, the Pennsylvania Supreme Court would likely hold that a motel guest is

not acting within the scope of his invitation when he engages in a criminal activity and would not

be accorded the status of an invitee, unless the motel knew of the prostitution.

---

[98] *Dumanski v. City of Erie*, 34 A.2d 508, 509 (Pa. 1943) (quoting Restatement (First) of Torts § 343 cmt. b (1934)); *accord Sabo v. Reading Co*., 244 F.2d 692, 694 (3d Cir. 1957).

[99] *Jefferson v. Young Men's Christian Ass'n of Chester*, 47 A.2d 653, 655-56 (Pa. 1946) (applying Restatement (First) of Torts § 343).

[100] *Moran v. Valley Forge Drive-In Theater, Inc*., 246 A.2d 875, 878 (Pa. 1968) (applying Restatement (Second) of Torts § 344 (1965)).

[101] Restatement (Second) of Torts § 332 cmt. *l* (emphasis added).

[102] *See, e.g*., *Farabaugh v. Pennsylvania Tpk. Comm'n*, 911 A.2d 1264, 1273 (Pa. 2006) (holding that defendant could not be liable to a business invitee when that person's employer was informed of dangerous condition); *Hughes v. Seven Springs Farm, Inc*., 762 A.2d 339, 345 (Pa. 2000) (holding that invitee skier assumed risk and could not recover for injuries); *Gardner by Gardner v. Consol. Rail Corp*., 573 A.2d 1016, 1019 (Pa. 1990) ("Assuming that this section applies to children who are invitees or licensees as well as trespassing children, the argument in favor of finding a duty as against the city assumes that the unrepaired fences are themselves the instrumentalities of harm. They were not."); *Carrender v. Fitterer*, 469 A.2d 120, 124 (Pa. 1983) (holding invitee could not recover when she was aware of danger and failed to avoid it); *Palenscar v. Michael J. Bobb, Inc*., 266 A.2d 478, 480 (Pa. 1970) ("It is perfectly clear under Section 343(b), as quoted above, that Bobb would have no duty to warn an invitee, such as Palenscar, Jr., of a danger which was more obvious to and more likely to be discovered by Palenscar, Jr., than by any employee of Bobb.").

Bonilla has no evidence that Motel 6 intended to permit the premises to be used for prostitution.[103]  Bonilla claims that "Motel 6 has been known to the local police as a hot bed of various criminal incidents,"[104] but cannot claim that Motel 6 had knowledge of specific instances of prostitution.  Motel 6 did not know of the subject prostitution.[105]  The evidence shows that Motel 6 tried to prevent prostitution and criminal behavior on its premises and cooperated with police.[106]

Bonilla's own conduct was criminal and immoral.  After participating in a criminal incident at the Motel 6, Bonilla now seeks to hold Motel 6 liable because criminal incidents (such as his own) occurred there.[107]  He should therefore be held to have not been an invitee. The evidence fails to show that Motel 6 breached any applicable duty to him.  Summary judgment should therefore be granted in Motel 6's favor.

### D.    Bonilla Cannot Produce Evidence that Any Breach Proximately Caused His Damages

Bonilla cannot point to any evidence that any breach of a duty by Motel 6 proximately caused his damages.  Summary judgment should be granted if the evidence is insufficient to establish that a defendant's alleged breach of duty could constitute the proximate, or legal, cause of Plaintiff's injury.[108]  Causation is a "required element which must be established in all negligence actions."[109]  "To satisfy the prima facie element of causation, the plaintiff must 'establish a causal connection between [the] defendant's conduct and the plaintiff's injury.'

---

[103] *See Hansen v. Cohen*, 276 P.2d 391, 394 (Or. 1954) ("By no stretch of the imagination could it be assumed that the defendants intended to permit the premises to be used for gambling purposes.").

[104] *See* Plaintiff's Pre-Trial Statement, Document 39, at 2.

[105] *See* McCauley Dep., Ex. L, 174:15-175:1.

[106] *See* Bruner Dep., Ex. J, 58:7-59:8; Torboli Dep., Ex. I, 20:3-23:3; Zofchak Dep., Ex. M, 33:3-36:10.

[107] *See Curtis v. Murphy*, 22 N.W. 825, 827 (Wis. 1885) ("[H]is profligate conduct was outraging all decency, and ruining the reputation of the hotel.").

[108] *Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 563 (E.D. Pa. 2004), *aff'd*, 121 F. App'x. 980 (3d Cir. 2005).

[109] *O'Rourke on Behalf of O'Rourke v. Rao*, 602 A.2d 362, 365 (Pa. Super. 1992).

Furthermore, [a court] cannot find the defendant's breach of duty to be a proximate cause if 'the plaintiff's injury would have been sustained even in the absence of the defendant's negligence.'"[110]  Bonilla cannot produce evidence that could establish proximate causation.

Bonilla cannot show that Motel 6's alleged failure to provide security, or any other alleged breach, would have prevented his injuries.  The evidence shows that there were no conditions perceptible to an outsider that would have indicated that the altercation was going to take place.  Bonilla testified that prior to the altercation, his assailants were not causing any disturbance, and were just acting like normal motel guests.[111]  Bonilla testified that during the attack, no noise was being made[112] and no one else, including his coworkers, came out of their rooms.[113]  In light of these admissions, any reasonable fact-finder would have no choice but to conclude that "the attack by plaintiff's assailant was a sudden, unforeseeable incident.  Plaintiff is unable to explain how the incident could have been avoided with reasonable security, based upon what was known to the [m]otel at the time."[114]  "Moreover, since the violent attack was targeted exclusively at him . . . and the [m]otel had no reason to anticipate such an attack, the only security measure that even arguably could have prevented the attack would have been the fortuitous presence of a security guard stationed at the exact location of the attack."[115]  Due to this lack of evidence that could establish proximate causation of his injuries, summary judgment should be granted in favor of Motel 6.

## V.   CONCLUSION

It is clear that plaintiff Gabriel Bonilla engaged in a criminal activity with the men who later assaulted him, and that the assault resulted from the criminal activity.  The law of

---

[110] *Midgette*, 317 F. Supp. 2d at 563.
[111] Bonilla Dep., Ex. A, 36:18–38:5; Willis Prelim. Hearing, Ex. B, 34:14–17.
[112] Bonilla Dep., Ex. A, 64:9–13.
[113] Bonilla Dep., Ex. A, 64:2–8.

Pennsylvania prohibits a plaintiff that was engaged in criminal activity from recovering for such harm that the criminal activity was a substantial factor in causing.  Further, as a matter of law, a motel has no duty to protect people from the consequences of their own acts, especially illegal acts.  Because plaintiff was injured as a result of his participation in illegal and dangerous activities, defendant Motel 6 Operating L.P. respectfully submits that summary judgment should be entered in its favor.

                                                    WARD GREENBERG HELLER & REIDY LLP

                                                    By: /s/ Edward A. Greenberg
                                                              Edward A. Greenberg (PA32171)
                                                              E-mail:  egreenberg@wardgreenberg.com
                                                              Paul D. Lux (PA203720)
                                                              E-mail:  plux@wardgreenberg.com
                                                              1835 Market Street, Suite 650
                                                              Philadelphia, PA 19103
                                                              Phone: (215) 836 1100
                                                              Fax: (215) 836 2845

                                                              Attorneys for Defendant,
                                                              Motel 6 Operating L.P.

---

[114] *See Rednour v. Hilton Hotels Corp.*, 283 A.D.2d 221, 222, 724 N.Y.S.2d 739, 740 (N.Y. App. Div. 2001).
[115] *See id.*

**CERTIFICATION OF SERVICE**

This is to certify that copies of the foregoing Motion for Summary Judgment, a

supporting statement of material facts, and brief were filed electronically and are available for

viewing and downloading from the Electronic Case Filing System.  Service is accomplished

pursuant to Local Rule 5.6 through the Court's electronic transmission of electronic filings to the

following:

**Attorneys for Plaintiff**

C.E. Kurowski, Esquire
Kusturiss, Wolf & Kusturiss
12 North Jefferson Avenue
Canonsburg, PA  15317

E.J. Julian, Esquire
71 N. Main Street
Washington, PA  15301


  /s/ Edward A. Greenberg
Edward A. Greenberg

Date:   February 25, 2011